Next case please. Next case is 4-12-0-4-4-8-W-C, Annette Wyatt v. Workers' Compensation Comm'n. Counsel, you may proceed. At least the commission counseled David Harrison for the petitioner. He represented Annette Wyatt. There were two parts to the commission's decision. One was causal connection, which we agree with. We think they probably found that there was causal connection. The second part of their decision was to cut off benefits to the petitioner as of August 20, 2008, when there was a negative EMG, and Annette would think that the commission was wrong. There were four doctors prior to that date who had diagnosed this woman with epicondylitis, Irving's tendinocinivitis. In fact, one of the doctors was even going to do surgery. He mistakenly thought she had RSD and decided not to. There was another doctor who saw her after that negative EMG who said, yes, you still have that same diagnosis and you need surgery. There's no intervening accident here that would have cut off the causal chain. There's no other causative factor. You don't simply have epicondylitis and Irving's tendinocinivitis, and it suddenly goes away and then resurfaces again. An EMG is not a completely reliable test. We don't know what happened and why there was this negative EMG, but for the commission to say somehow her condition had resolved itself really doesn't medically make any sense. What the circuit court wanted to do, and then decided not to do, was to remand the case back under Section 19F-2 and have the commission consider the significance, if any, of this negative EMG and try to figure out what significance, if any, it had towards causal connection, given that there was a doctor before and a doctor after who wanted to do surgery for that condition that altogether five doctors had diagnosed. The only negative evidence as far as causal connection here was the examination of Dr. Lee, the IME doctor, who in his original report asked her what she did. She said she worked in a cabinet factory, and he said, I don't find any causal connection. I probably should have stopped right there in terms of the deposition, and I have not asked him anything further, but he was of the mindset that there wasn't any causal connection. What do you make of the complaining of left wrist and leg pain that you never alleged was caused by her work after she discontinued the work? How does that enter into this? In the commission, weren't they troubled by that? I don't remember anything specifically about that. Where they were troubled by that, it could be, and I have to admit I'm speculating, but if she's got problems on the left side, it could be from trying to avoid doing things because of all the problems that she had on the right side. That's something we see frequently with people who develop carpal tunnel or some other problem with one hand or who have a problem with the knee and start favoring the one and start developing problems with the other. So if anything, that says to me she's got a problem with the right hand and she's now trying to avoid using that, and that's why she may or may not have these problems. If I can call out your argument saying the commission concluded apparently that there was some evidence that her condition was caused by some circumstance unrelated to the work, but you're saying there's nothing to show there. Does that seem to be what you're saying? I'm not sure they know what they're saying. They're saying that they found causal connection. There were four doctors who identified what that condition was. Somehow she has a negative EMG, and yet this is August of 2008, November of 2008. She's seeing another doctor, a hand surgeon, who says you still have the same condition and you still need surgery for it. So they found it, but not after August 20, 2008. Correct. They cut it off as of that date. And I don't see why. There isn't any, it's not like she had a knee injury and then had another knee injury somewhere along the way that would break the causal chain. To me that doesn't make sense, which is why the circuit court judge wanted to send this case back to have a hearing on this issue, and I think that was the appropriate remedy. And I'm sorry that he decided that he didn't have the power to do that. I believe that he did under the statute, and that's the way it should have been. Is there a case that says that he has the power to remand when he confirms causation or only when he reverses it? As I looked at the, I didn't find anything specifically on that point, but as I'm looking at the statute, it says the court may confirm or set aside the decision of the commission if the decision is set aside. Well, in this case... Then he can remand, and the decision wasn't set aside, was it? No, it wasn't. Correct. The main decision itself, finding causal connection... So he can't remand. There's two parts to this, John. I think that's where I have... My contention is that the commission found causal connection and cut off causal connection. There were actually two parts to the decision. That's the part that the circuit court had the problem with, and that's the part that didn't seem to make sense. And I think you have to split this into two parts. Otherwise... Even if you do, what did the circuit court set aside of the commission's decision? Nothing. I think he wanted to do it in his decision. I don't care what he wanted to do. What did he do? He affirmed causal connection. He set aside nothing, so according to that statute, he has no power to remand. His power to remand is only if he does the latter, meaning set aside. If he had made the decision he had intended to make when he thought he had the power to do this... Are we deciding this on what he intended to do or what he actually did? I hate to ask the question, but there's a difference. Yes, Your Honor, I believe that there is. However, we're all looking at the commission decision, and the commission decision itself I believe doesn't make sense, and I think this court has the power under Section 19F to remand the case back if it doesn't make sense. So I think the circuit court should have done it, but since the circuit court didn't do it, which I think would have been proper, I think this court still has the power to do that under 19F. Theoretically, yes, if we decide to do it. But if we vacate it, it goes back anyway. But I don't see where he had the power to do it. I think he was right. He set aside nothing, so he can't send it back. We better move on from that point because your time is going. In terms, well, actually, in the situation we're in right now, we have, if the decision is left unchanged, we have the commission finding that there's a causal connection up to a certain point, and now she has another problem where she somehow magically has another situation created where she needs surgery for the same condition she needed surgery for when she saw another doctor five months earlier. So I don't see how the decision itself as is makes any sense, and I would hope that if justice would prevail here, the proper thing for this to be done. You don't address a very, very important point that your opponent raises in their brief, and that's our ability to consider anything other than what you raised in your notice of appeal, and that is his power to remand. You didn't raise anything else in your notice of appeal. What's the answer to that? We consider these other matters that you didn't raise. I mean, you've argued today the causation issue after the 20th, but you don't raise any of that in your notice of appeal. You only say his ability to remand is what you want to examine. Can we do it? I shouldn't say can we. Should we? And, Your Honor, I think that's the point I'm trying to make in terms of basic fairness. We have, as we all know, we've heard repetitive trauma situations here and confusing things. We have a woman who four doctors said that she had a problem. Now a fifth one said she had a problem, and the decision itself, if we're saying, yes, the commission has found that there is cause of connection, but the commission has cut it off, to me that doesn't make sense. That's against that part of the decision. It's against the manifest way of the evidence. That's the part that I think should be referred to. So you're saying it's part and parcel of challenging the commission's finding. Is that what you're saying? Correct, Your Honor. Otherwise, the decision itself simply doesn't make sense in terms of the facts presented. It's against the manifest way of the evidence, and, therefore, this Court should correct it. However you would choose to do that, my recommendation would be the 19-F, remand it back to the commission so we can get some further evidence on this and sort it out. But I think that's the way to go. Thank you. Thank you, counsel. Counsel, you may respond. Good morning, Your Honors. May it please the Court. Jenny Van Hampton on behalf of Master Brand Cabinets. I'm going to address the two substantive issues before the Court, but I will be, of course, happy to take questions about the procedural defect in the petitioner's notice of appeal. The appellee argues that, of course, it was not against the manifest way of the evidence for the commission to end the causation cutoff date as of August 20, 2008. This was the date of a second normal EMG. In fact, we would argue that it would not have been against the manifest way of the evidence for the commission to have cut off the causation as early as six months prior, in January 2008, the date of a first completely normal EMG. In fact, the month after that, in February of 2008, a second doctor, so one doctor found normal EMG. A month later, a completely different doctor returned Ms. Wyatt to work with no work restrictions. And in fact, he noted in his records that there were no objective findings to support her subjective complaints of pain. And it noted that there was no connection between her work and her subjective complaints. So are you suggesting we have to be blunt about it? Was there some evidence of malingering in it? Is that how you would attribute her testimony regarding the symptoms? If you testify there were problems, obviously. That would be a reasonable inference that the commission could have drawn. It did not expressly draw that inference, but that would have been a reasonable inference. One thing that the commission did note in one of the bases for its causation cutoff date was that it noted that over time Ms. Wyatt's subjective complaints of pain expanded at the same time the objective medical evidence supporting those subjective complaints narrowed. And it found that as her complaints continued to expand in the absence of any objective medical findings, it made her testimony less credible. And really what Ms. Wyatt is asking the court to do here is to re-weigh the evidence, which we can't do at this point. The commission relied on the fact that there was a normal EMG in January of 2008, followed by a month later Ms. Wyatt being returned to work unrestricted by a completely separate physician. That physician said there's no medical evidence supporting her subjective complaints. A month later a third doctor returns Ms. Wyatt to work without any restrictions. So we have three doctors in a three month period finding nothing wrong with her. And so then fast forward to August 2008, just three months later, she goes to yet another doctor who issues another EMG and that EMG comes out completely normal. So we have four doctors finding no medical evidence substantiating her complaints of pain. And so it's not until this August 20th date that the commission says, okay, we'll go ahead and cut off causation. So there's really no argument here that it was against any manifest weight of the evidence that the commission cut off causation as of August 20th, 2008. On the other hand, was there any evidence that reduces to whether her condition that she testified to, malignant or not, was caused by something unrelated to work? There was no evidence on the other side either, right? Well, one thing that counsel admitted to report was that she did have a car accident in June 2008, just two months prior to the causation cutoff date. And that is in the record. I don't know that that was a fact the commission relied on. They didn't cite that as a fact, but it is a fact in the record and it's yet another fact at least supporting the reasonableness of the commission's causation cutoff date as of August 20th, 2008. I mean, really the only argument that petitioner sets forth rebutting the August 20th, 2008 causation cutoff date is that her own expert witness, Dr. Dumanian, made the same diagnosis that some, but not all of the doctors made prior to the causation cutoff date of 2008. A couple of responses to this. First, again, this is asking the court to re-weigh the evidence, which we can't do at this point. Second, the commission outright rejected Dr. Dumanian's opinion because it found he didn't understand the petitioner's job duties. He didn't even understand that the injury was to her non-dominant right arm. So it rejected Dr. Dumanian's opinion and ultimately the commission found, when it weighed the evidence, it found the lack of medical objective evidence supporting her subjective complaints of pain more credible than Dr. Dumanian's opinion. The court just didn't find Dr. Dumanian credible. And that's really the only argument that petitioner has asserted with respect to the causation cutoff date. So in any event, your conclusion would be that there's evidence in the record to support the commission's decision. There's ample of it. There's overwhelming evidence and certainly an argument is not tenable that an opposite conclusion is clearly apparent. Really what the petitioner is asking the court to do is to substitute its own judgment for that of the commission, merely because a different inference can be drawn. And we all know that that is not appropriate under the standard of review. So we can go ahead and take a look at the issue of this theoretical decision to remand the case. We argue that the circuit court appropriately vacated its decision to remand the case, when it affirmed in its entirety the commission's decision on causation. What the petitioner seems to be wanting to do here is to put the cart before the horse. He's sort of arguing, well, gee whiz, the trial court was sort of considering remanding the case and maybe it could have under certain circumstances and because it could have, it should have, completely ignoring the fact that the trial court affirmed the commission's decision in all respects. I don't think you need to spend a lot of time working on that one. And just as one point, the petitioner has completely failed to respond to our argument that it would have violated the law of the case if the trial court on one hand affirmed the commission's decision in all respects, but then would have remanded the case back to the commission. Unless you have further questions. I don't believe we do. Thank you, counsel. Thank you. Counsel, you may reply. Very briefly, I'm still waiting for, and I didn't hear anything as far as an intervening accident or a cutoff or anything else that would change the causal connection from the doctors, all of whom, contrary to what was just said earlier, all of whom said that this woman had the curvings, excuse me, epicondylitis and the curvings, tenosynovitis, and that includes Dr. Hogue, Dr. Johnson, Dr. Mandela, Dr. Hartman, and Dr. Imani, five doctors. They all said that this is the condition that she has. I don't see anything in anything that's been presented or in the record that shows an intervening accident, an intervening repetitive activity, anything else that would cut off the causal chain. So for the commission to make the argument they did that somehow the negative EMG means that somehow she had magically healed and the problem was no longer there, and then three months later the problem is still there, to me, simply is not logical. It doesn't make sense. Well, she says, not to, you know, parse at the eleventh hour here, almost noon, that there was medical evidence they could have actually justified cutting it off six months earlier, and they didn't because there's medical evidence six months earlier. What's your response to that? If the medical evidence is a negative EMG and the EMG is only 75% reliable, just statistically that's what it is. So what does that mean? If the commission did find causal connection, and since they did find causal connection, why does that negative EMG mean suddenly somehow her condition has resolved? That's the problem. That's the conundrum. I have a client who needs surgery for a condition that five doctors all agree that she had, and we're not going to give it to her because of a negative EMG. What's the significance of it? I don't know. That's the problem. Thank you. Thank you, counsel. A matter of particular advisement, this position shall issue.